UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDDIE JAMES MOULTRIE,

        Petitioner,

v.                              Case No. 3:20-cv-812-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

**ORDER**

**I. Status**

        Petitioner Eddie James Moultrie, an inmate of the Florida penal system, initiated this action on July 20, 2020,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Moultrie challenges a 2015 state court (Duval County, Florida) judgment of conviction for armed burglary, aggravated battery with a deadly weapon, and resisting an officer without violence. He raises four grounds for relief. See Petition at 5-10. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 9). They also submitted exhibits. See Doc. Nos. 7-1 — 7-19.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Moultrie filed a brief in reply and an exhibit. See Reply (Doc. Nos. 8, 8-1). This action is ripe for review.

## II. Relevant Procedural History

On September 5, 2013, the State of Florida charged Moultrie by information with armed burglary (count one), aggravated battery with a deadly weapon (count two), battery (count three), and resisting an officer without violence (count four). Doc. 7-1 at 35-36. At the conclusion of a trial, on January 15, 2015, the jury found Moultrie guilty of counts one, two, and four and not guilty of count three. Id. at 128-33. On March 13, 2015, the trial court sentenced Moultrie to a term of imprisonment of fifteen years. Id. at 175-83.

On direct appeal, Moultrie, with the benefit of counsel, filed an initial brief in which he argued that Moultrie did not commit burglary under Florida law because he only entered the victim's private bedroom in the rooming house where Moultrie lived (ground one) and the trial court did not perform an adequate Faretta[3] inquiry upon learning that Moultrie suffered from vision issues (ground two). Doc. 7-4 at 1-39. The State filed an answer brief. Doc. 7-5 at 1-27. Moultrie filed a reply brief. Doc. 7-6 at 1-22. Florida's First District Court of Appeal (First DCA) per curiam affirmed Moultrie's conviction and

---

[3] Faretta v. California, 422 U.S. 806, 807 (1975).

2

sentence without a written opinion on June 15, 2016, Doc. 7-7 at 4, and issued the mandate on August 10, 2016, id. at 3.

On September 4, 2016, Moultrie filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Doc. 7-9 at 6-17 (Rule 3.850 Motion). In his Rule 3.850 Motion, Moultrie alleged counsel was ineffective for failing to move for a new trial based on juror misconduct (ground one), the State failed to disclose exculpatory DNA evidence and the crime scene technician's deposition in violation of Brady[4] (ground two), counsel was ineffective for failing to obtain a competency evaluation (ground three), and counsel was ineffective for waiving Moultrie's right to speedy trial against his wishes (ground four). Id. The postconviction court determined that grounds two and three were insufficiently pled and granted Moultrie leave to amend. Id. at 64-66. On February 1, 2018, Moultrie filed an amended motion for postconviction relief in which he amended the claim in ground two and abandoned the claim in ground three. Doc. 7-10 at 5-7 (Amended Motion). The postconviction court denied Moultrie's Rule 3.850 Motion and his Amended Motion for postconviction relief. Doc. 7-9 at 289-99. The First DCA per curiam

---

[4] Brady v. Maryland, 373 U.S. 83 (1963).

affirmed the denial of relief without a written opinion on June 17, 2020, Doc. 7-13 at 3, and issued the mandate on August 18, 2020, id. at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Moultrie's] claim[s] without

further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter,

5

562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at --

7

-, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

8

performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not

> disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## C. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any

11

constitutional issues by invoking one complete round of the State's established

appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our

system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause,

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171
(11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Moultrie asserts he was denied his constitutional right to a speedy trial. Petition at 5. Specifically, Moultrie complains that the trial court allowed his defense counsel to waive his right to speedy trial after he expressed his desire for a speedy trial and he suffered prejudice because the evidence technician, Moultrie's only witness, died before he was brought to trial. <u>Id.</u> In his Reply, Moultrie further contends that counsel rendered

ineffective assistance by waiving his constitutional and statutory rights to a speedy trial. Reply at 12-16.

As Respondents correctly note, see Doc. 7 at 21-23, Moultrie did not raise the claim that he was denied his constitutional right to a speedy trial on direct appeal as required by Florida law. Rather, in his Rule 3.850 Motion Moultrie alleged that counsel rendered ineffective assistance by waiving his state law right to speedy trial. Doc. 7-9 at 55-56. Moreover, Moultrie did not argue that he was prejudiced by the waiver because the crime scene technician died. Id. Thus, the substantive speedy trial claim raised in Ground One is unexhausted and barred from review absent the applicability of an exception to the procedural default bar.

To overcome his procedural default of the substantive violation of his constitutional right to speedy trial claim, Moultrie contends that appellate counsel failed to raise the issue on direct appeal from his conviction. Reply at 8. Notably, in his state habeas petition Moultrie alleged that appellate counsel was ineffective for failing to argue that he was denied his constitutional right to a speedy trial. Doc. 7-15 at 4-6. The First DCA summarily denied the claim on the merits. Doc. 7-16 at 2.

A claim of ineffective assistance of counsel may support a finding of cause if it was raised in the state courts as an independent claim. See Murray v. Carrier, 477 U.S. 478, 489 (1986). However, "[f]or a claim of ineffective assistance of counsel to serve as cause to overcome a procedural bar, the claim of ineffectiveness must be meritorious." Thompson v. Sec'y for Dep't of Corr., 517 F.3d 1279, 1282 (11th Cir. 2008). The Court, therefore, will consider whether Moultrie's ineffective assistance of appellate counsel claim is meritorious.

To determine whether an individual's constitutional right to a speedy trial was violated, courts consider four factors as being "particularly relevant: [the] (1) length of delay, (2) reasons for the delay, (3) [ ] defendant's assertion of the speedy trial rights and (4) prejudice to the defendant." Glidewell v. Burden, 822 F.2d 1027, 1029 (11th Cir. 1987) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). "None of the individual factors is 'either a necessary or a sufficient condition to [a] finding of a deprivation of the right to a speedy trial.'" Id. (quoting Barker, 407 U.S. at 530). Instead, a court must consider all relevant circumstances in a "sensitive balancing process." Id.

In Florida, Rule 3.191 governs a defendant's right to speedy trial. Pursuant to Rule 3.191(a), the state shall bring a defendant charged with a

felony to trial within 175 days. "This right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." Dillard v. Sec'y Dep't of Corr., 440 F. App'x 817, 819 (11th Cir. 2011) (citing State v. Nelson, 26 So. 3d 570, 574 (Fla. 2010)). As such, "to claim a violation of speedy trial rights, a defendant must move for a discharge" before trial or he is precluded from raising the issue on direct appeal. State v. Riechmann, 777 So. 2d 342, 365 (Fla. 2000). Notably, "[under Florida law,] a waiver of speedy trial by counsel is binding on the defendant, 'even though done without consulting him and even against the client's wishes.'" Dillard, 440 F. App'x at 820 (quoting State v. Kruger, 615 So. 2d 757, 759 (Fla. 4th DCA 1993)); see also New York v. Hill, 528 U.S. 110, 115 (2000) (holding that defense counsel could waive defendant's right to be brought to trial within the 180-day period specified under the Interstate Agreement on Detainers, by agreeing to a trial date outside that period, even without the express consent of defendant).

Here, Moultrie did not move for a discharge based on a speedy trial violation before trial nor did he raise his constitutional right to speedy trial. Appellate counsel, therefore, was not deficient for failing to argue that Moultrie's right to speedy trial was violated, and Moultrie's claim is not meritorious. See id. (concluding appellate counsel was not ineffective for failing

18

to raise speedy trial issue where it was not preserved in the trial court).

Moreover, Moultrie has not established that his constitutional right to a speedy trial was violated; therefore, he has not shown he was prejudiced by appellate counsel's failure to raise the issue on direct appeal. There was an approximate sixteen-month delay from the filing of the information and Moultrie's trial. Moultrie advised the trial court in April 2014 that he did not wish to waive his statutory right to speedy trial. Nevertheless, his attorney chose to waive speedy trial because she needed to take additional depositions and because Moultrie had given her additional information that he wanted her to investigate. Doc. 7-9 at 488. From counsel's representations, legitimate reasons existed for counsel to waive speedy trial.

Moultrie also has not shown he was prejudiced by the delay in his trial as a result of trial counsel's waiver. He complains that because of the delay his only witness, the evidence technician, died before trial. Moultrie, however, has not shown how the evidence technician's testimony would have assisted the defense. The State, without objection, admitted into evidence the photographs taken by the evidence technician at the scene of the burglary and the

cinderblock that Moultrie threw at the victim.[8] <u>See</u> Doc. Nos. 7-1 at 214, 7-2 at 19, 134. The victim testified that the photographs accurately depicted the home at the time of the burglary. Doc. 7-2 at 123. Moultrie fails to explain what testimony the evidence technician could have provided that would have refuted the evidence presented at trial, which included the victim's testimony that Moultrie came into his bedroom while the victim was sleeping, hit him in the face with a cinderblock, and engaged in a fight with the victim, choking him with a stool. Considering the <u>Barker</u> factors, the Court concludes that Moultrie has not shown a violation of the Sixth Amendment right to speedy trial. Thus, Moultrie has not established that he has a meritorious claim that appellate counsel was ineffective to overcome the procedural default of his substantive constitutional speedy trial claim.

To the extent Moultrie contends counsel was ineffective for waiving his statutory and constitutional rights to speedy trial, he raised a substantially similar claim in his Rule 3.850 Motion. Doc. 7-9 at 13-15. In denying relief, the postconviction court stated in pertinent part:

> Moving to continue a trial waives a defendant's
> speedy trial rights, and counsel may waive speedy trial

---

[8] In fact, Moultrie requested the State to introduce the cinderblock into evidence. Doc. 7-2 at 291-93.

over a client's objections. <u>Randall v. State</u>, 938 So. 2d 542, 544 (Fla. 1st DCA 2006). Accordingly, "if the right to speedy trial may be waived without consulting the defendant, counsels' waiver here cannot be considered an error, let alone one that is 'so serious that "counsel" was not functioning as the counsel guaranteed the defendant by the Sixth Amendment'". <u>McKenzie v. State</u>, 153 So. 3d 867, 875 (Fla. 2014) (citing <u>Strickland</u>, 466 U.S. at 687); <u>see also</u> <u>Ford v. State</u>, 955 So. 2d 550, 555 (Fla. 2007) (finding counsel's waiver was based upon reasonable trial strategy and therefore did not constitute deficient performance.)

Counsel did not act outside the wide range of reasonable professional assistance in waiving Defendant's right to speedy trial over his objection. Instead, the record refutes Defendant's a1lesgation and illustrates that counsel waived Defendant's right to speedy trial in order to adequately prepare Defendant's case because, although she had completed the majority of discovery in the case, there were additional depositions to complete and Defendant had provided her information that same day and requested she look into it. Further, counsel stated that she attempted to speak with Defendant the day prior and he refused and as a result, she did not feel comfortable demanding speedy trial but would leave the decision of whether or not to put Defendant's case on the trial calendar up to this Court. On the day that Defendant began to represent himself, December 2, 2014, he invoked his right to speedy trial upon demand, pursuant to Florida Rule of Criminal Procedure 3.191(b). Jury selection began on January 12, 2015. Therefore, the requirements of the Rule were complied with. Defendant's fourth ground is without merit.

<u>Id.</u> at 298 (record citations omitted). The First DCA per curiam affirmed the

21

denial of relief without a written opinion. Doc. 7-13 at 3.

To the extent that the First DCA decided the claim on the merits,[9] the Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. As previously noted, under Florida law, "an attorney may waive speedy trial without consulting the client and even against the client's wishes." McKenzie v. State, 153 So. 3d 867, 875 (Fla. 2014), on reh'g (Dec. 11, 2014) (citing McKenzie v. State, 29 So. 3d 272, 282 (Fla. 2010)). Further, as discussed above, Moultrie has not shown that prejudice resulted from counsel's waiver of speedy trial. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Moultrie is not entitled to federal habeas relief on the claim in Ground One.

---

[9] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

## B. Ground Two

In Ground Two, Moultrie maintains that his constitutional rights were violated by the prosecution's failure to provide him with a copy of the evidence technician's deposition. Petition at 7. According to Moultrie, the prosecutor's failure to give him the deposition deprived him "of his only defense strategy and material witness who possessed the ability to bring critical insight . . . regarding the facts of the case." Id.

Moultrie raised a substantially similar claim in his Amended Rule 3.850 Motion. Doc. 7-10 at 6-7. In denying relief, the postconviction court stated in pertinent part:

> In its Order Granting Defendant Leave to Amend, this Court found, as to the evidence technician's deposition, that Defendant failed to provide "detail or specific grounds upon how the evidence was favorable and qualifies as Brady evidence." Defendant alleges in his Amended Motion that when he learned the evidence technician had been deposed and was expected to testify at trial, he informed this Court he had no knowledge of the deposition, and asked for a copy. He alleges the State agreed to provide a copy, but never did. He asserts he was deprived of due process by the State's "failure to preserve and disclose evidence, that may be expected to play a significant role in a proceeding." Defendant alleges he was prejudiced in his trial preparation by not having the deposition transcript, because the evidence technician's testimony was "crucial in any case especially to Defendant's." He asserts that he

23

would have read the deposition into evidence as perpetuated testimony "because a [sic] substantive 'evidence it was [sic] revealed facts opposed to the credibility of the victim." Getting to the crux of the insufficiency noted in this Court's Order Granting Leave to Amend, Defendant asserts that "the [d]eposition contained possible favorable evidence which was relevant and material to the Defendant['s] trial preparation and if disclosed would [have] reasonably put the case in such a different light as to undermine confidence in the verdict."

Because the evidence technician did not testify for the State, lack of the deposition transcript did not prejudice Defendant by depriving him of an opportunity to impeach a witness. Moreover, Defendant's Amended Motion suffers the same infirmity as the original Motion: Defendant's admission that the presence of favorable evidence in the deposition was only a possibility underscores the fact that the existence of exculpatory evidence in the deposition is completely speculative, rendering the claim meritless. Cooper v. State, 856 So. 2d 969, 974 (Fla. 2003) (holding Brady claim meritless where only indication of existence of basis to impeach prosecution witness was "offered in the form of pure speculation"); see also Wright, 857 So. 2d at 870; Davis v. State, 736 So. 2d 1156, 1159 (Fla. 1999) (holding defendant cannot prevail in postconviction context on basis of "tenuous speculation"); see also Brown v. State, 827 So. 2d 1054, 1056 (Fla. 2d DCA 2002) (finding defendant may not prevail in postconviction case on "speculative, attenuated, and too fanciful" reasoning in seeking to demonstrate prejudice). Like the alleged DNA test results, the unavailability to Defendant of the evidence technician's deposition did not cause prejudice. Had the deposition been as favorable to Defendant as possible, i.e., had the evidence

technician conceded that no physical evidence connected Defendant to the crime scene, the other evidence in the case would preserve confidence in the verdict. The same is true if both the DNA test results and evidence technician's deposition were as favorable as possible to the Defendant and admitted into evidence. Therefore, both parts of Defendant's second ground are without merit.

Doc. 7-9 at 296-97 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-13 at 3.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." To prevail on a Brady claim, the defendant must show: "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." Wright v. Sec'y, Fla. Dep't of Corr., 761 F.3d 1256, 1278 (11th Cir. 2014) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). "Brady's prejudice prong, also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995)).

Moultrie has not demonstrated that the evidence technician's deposition contained either exculpatory or impeaching testimony or that suppression of the deposition prejudiced him. As discussed above, the evidence gathered by the evidence technician was admitted into evidence at trial without objection. Moultrie fails to explain how the evidence technician's deposition would have refuted any of the evidence presented at trial. Consequently, he has not established a <u>Brady</u> violation occurred. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Moultrie is not entitled to federal relief on Ground Two.

## C. Ground Three

Moultrie next asserts that the prosecutor's failure to preserve potentially exculpatory evidence violated his right to due process. Petition at 8. In support, Moultrie complains that in closing the prosecutor argued that all the blood

26

reflected in the photographs belonged to the victim to refute Moultrie's claim of self-defense, but the DNA evidence collected from the crime scene was not tested and was destroyed after trial.[10] Id.

Moultrie raised a similar claim in his Rule 3.850 Motion and in his reply to the State's response to his Rule 3.850 motion. Doc. 7-9 at 9-11; see also Response at 37-38. In addressing this claim in the post-conviction proceeding, the State maintained that Moultrie failed to show a violation of Brady or Arizona v. Youngblood, 488 U.S. 51 (1988).[11] Doc. 7-9 at 73-77. In denying relief, the post-conviction court concluded that Moultrie failed to establish a Brady violation. Id. at 293-97. The post-conviction court, however, did not discuss whether the State's post-trial destruction of the DNA evidence violated Moultrie's rights. Id. On direct appeal, Moultrie argued that the State acted in bad faith in destroying the DNA evidence post-trial. Doc. 7-11 at 33, 35-38. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-13 at 3.

---

[10] The State presented evidence that the victim's DNA was on Moultrie's shirt and shorts. Doc. 7-2 at 334.

[11] In Youngblood, the Supreme Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988).

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Moultrie has not shown that the State acted in bad faith by destroying the DNA evidence after trial. Moultrie knew, or should have known, at the time of trial that DNA evidence had been collected. There is no indication that the State concealed this fact from Moultrie, who could have requested the evidence to be tested but did not do so. Notably, the State does "not have a constitutional duty to perform any particular tests." Youngblood, 488 U.S. at 59.

Further, "the State's duty to preserve evidence is limited to 'evidence that might be expected to play a significant role in the suspect's defense.'" Davis v. Sellers, 940 F.3d 1175, 1187 (11th Cir. 2019) (quoting California v. Trombetta, 467 U.S. 479, 488 (1984)). The blood evidence from the victim's bedroom or anywhere else in the house would not have aided the defense. Had Moultrie's blood been found in the victim's bedroom, it would have conclusively refuted Moultrie's contention that he did not enter the bedroom. In addition, such evidence would not have proven that Moultrie acted in self-defense considering that the victim admitted that he and Moultrie engaged in a fight after Moultrie hit him with a cinderblock. Thus, Moultrie's blood could have

28

been in the home because of the fight, regardless of whether Moultrie was acting in self-defense.

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[12] Thus, Moultrie is not entitled to federal habeas relief on Ground Three.

## D.  Ground Four

Last, Moultrie alleges he was denied his right to an impartial jury. Petition at 10. According to Moultrie, he learned after trial that his stand-by counsel heard one of the alternate jurors make statements to the prosecutor that indicated the jurors were deliberating and forming opinions before the close of evidence. Id. In his Reply, Moultrie also argues that his stand-by counsel, who was reappointed after trial, was ineffective for failing to move for a new trial on this basis. Reply at 11-12.

Moultrie raised a substantially similar claim in his Rule 3.850 Motion.

---

[12] Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Moultrie's claim is without merit for the reasons stated previously.

Doc. 7-9 at 7-9. In denying relief, the postconviction court stated in pertinent part:

> In the instant case, the State and standby counsel informed this Court of their concern that jurors may have been speaking about the case before deliberations began, based upon statements made by the alternate juror. Specifically, their concern was that members of the jury had expressed sympathy for the female alleged victim and possibly discussed the relative strengths and weaknesses of the State's case on the different counts. After a lengthy discussion, this Court determined it to be appropriate to have the jury continue to deliberate and, upon receiving their verdict but prior to publishing it, this Court would review and confirm that the jury abided by the jury instructions. Thus, after the jury reached its verdict, this Court reminded the jurors that they were advised not to speak about the case until they heard all the evidence, the arguments of the attorneys and Defendant and the instructions on the law by the Judge, and the jury confirmed that they followed the instruction. Jurors are presumed to follow a court's instructions. Sutton v. State, 718 So. 2d 215, 216 (Fla. 1st DCA 1998). In the instant case, the jury affirmed that they did follow this Court's instructions. As such, the record refutes Defendant's factual allegation which forms the basis for Ground One. Without a factual basis, there was no error, much less fundamental error.
>
> Defendant asserts standby counsel was ineffective for failing to warn Defendant of the alleged juror misconduct after she learned about it at a sidebar conference without Defendant. "[A] defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel."

30

> Behr v. Bell, 665 So. 2d 1055, 1057 (Fla. 1996). "Such
> a defendant cannot thereafter complain that the
> quality of his defense was a denial of 'effective
> assistance of counsel.'" Id. (citations omitted).
> Defendant represented himself and was therefore
> solely responsible for his defense. As such, Defendant
> may not claim standby counsel was obligated to inform
> him of the substance of the sidebar conference.
>
> Defendant alleges counsel, previously standby
> counsel, appointed to represent Defendant at
> sentencing, failed to address the juror misconduct in
> the Motion for New Trial. Because the allegation of
> jury misconduct was factually refuted at the close of
> deliberation, counsel was not ineffective for failing to
> include that ground in the Motion for New Trial.
> Additionally, Defendant has failed to show prejudice
> in light of the overwhelming evidence of Defendant's
> guilt presented at trial, including the testimony of two
> victims and the identification of one of the victims'
> blood on Defendant's clothing. Ground One is without
> merit.

Id. at 292-93 (record citations omitted). The First DCA per curiam affirmed the

denial of relief without a written opinion. Doc. 7-13 at 3.

To the extent that the First DCA decided the claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. The record reflects that after

the alternate jurors were dismissed, Moultrie's stand-by counsel told the trial

judge that she heard one of the alternate jurors tell the prosecutor that they

were discussing the female victim and felt sorry for her and they thought count

31

two was the strongest.[13] Doc. 7-2 at 463-64. The trial judge decided to allow the jury to continue to deliberate and question the jury regarding their deliberations before publishing the verdict. Id. at 466. Before publishing the verdict, the trial judge asked the jurors if they had followed her instructions not to speak about the case until they had heard all the evidence, arguments of the prosecution and defense, and instructions on the law from the judge. Id. at 475. The jurors affirmed that they had done so. Id. Consequently, the post-conviction court's determination that there was no juror misconduct is a reasonable determination of the facts in light of the evidence. Further, given the jury's representation, counsel cannot be deemed deficient for failing to move for a new trial based on jury misconduct.

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination

---

[13] Although not mentioned by the trial or post-conviction court, the Court notes that the incident occurred after the two alternate jurors had been dismissed. Thus, the alternate juror could have been discussing a conversation he had with the other alternate juror after they were dismissed, rather than premature conversations between those jurors that deliberated and reached a verdict.

of the facts in light of the evidence presented in the state court proceedings. Thus, Moultrie is not entitled to federal habeas relief on Ground Four.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Moultrie seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Moultrie "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason

33

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Moultrie appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

34

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of June, 2023.

MARCIA MORALES HOWARD
United States District Judge

OrlP-1 6/9
C:     Eddie James Moultrie, #J54553
       Counsel of record

35